IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RANDLE C. DANIELS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:19-cv-00416-P |
| REGIONS BANK, d/b/a REGIONS MORTGAGE, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Regions Bank, d/b/a/ Regions Mortgage's (Regions) Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (ECF No. 6), filed May 28, 2019. Having considered the Motion, briefing, and the applicable law, the Court finds that Regions' Motion to Dismiss should be and is hereby **GRANTED**.

## I. BACKGROUND[1]

In 1988, Plaintiff Randle C. Daniels acquired certain property, which is commonly known as 4630 Collinwood Avenue, Fort Worth, Texas 76107 ("Property"), and more particularly described as follows:

---

[1] The Court draws its factual account from the allegations in Plaintiff's Original Petition. *See Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that when considering a Rule 12(b)(6) motion to dismiss, "all facts pleaded in the complaint must be taken as true"). The Court also considers the Security Instrument attached to Regions' Motion to Dismiss (Def's Ex. 1, ECF No. 6-1) because it is referred to in Plaintiff's Complaint and is central to his case. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (noting with approval a district court's consideration of documents attached to a motion to dismiss that are referred to in and are central to the plaintiff's complaint, even if the documents are not attached to the plaintiff's complaint).

1

> Being Lots 21, 22, and 23 in Block 41, Chamberlin Arlington Heights, First Filing, an Addition to the City of Fort Worth, Tarrant County, Texas, According to the Map Thereof Recorded in Volume 63, Page 21, Map Records, Tarrant County, Texas.

*See* Pl.'s Orig. Pet. at ¶ 3.2, ECF No. 1-1. In June 2000, Plaintiff conveyed an undivided one-half interest in the Property to his mother, Johnnie N. Daniels. *Id.* Since he first acquired the Property, Plaintiff has used and claimed it as his homestead. *Id.*

On May 9, 2008, Johnnie signed a Texas Home Equity Note ("Note") with a principal amount of $315,000 payable to Western Mortgage Co., a Texas Corporation. Pl.'s Orig. Pet. at ¶ 3.1, ECF No.1-1. Also on May 9, 2008, Johnnie signed a Texas Home [Equity] Security Instrument ("Security Instrument" or "Deed of Trust"). *Id.* at ¶ 3.3. Plaintiff's purported signature also appears on the Security Instrument, and the Security Instrument identifies both Plaintiff and Johnnie as "Borrower[s]." *Id.* at ¶ 3.4.

Johnnie died on April 14, 2010, and Plaintiff claimed to be the sole owner of the Property. *Id.* at ¶ 3.5. However, Troy Lee Daniels disputes this claim and contends that Johnnie's one-half interest is part of her probate estate. *Id.*

On March 14, 2017, Regions filed an Application for Expedited Order pursuant to Texas Rule of Civil Procedure 736 ("736 Application"). Pl.'s Orig. Pet. at ¶ 3.6. Regions named Plaintiff and Troy Lee Daniels as Independent Executor of the Estate of Johnnie N. Daniels, Deceased, as respondents. *Id.* In the 736 Application, Regions asserted that it was the holder of the Note and Security Instrument. *Id.* at ¶ 3.7. Plaintiff contends that the Note attached to the 736 Application does not reflect any special indorsement to Regions but instead contains an indorsement in favor of Flagstar Bank, FSB and an allonge with a

stamped blank indorsement. *Id.* Plaintiff also alleges that the 736 Application failed to include a notice of default and opportunity to cure that had been sent to him. *Id.* at ¶ 3.8. The affidavit attached to Regions' 736 Application stated that the Note had been in continuous default for at least 47 months. *Id.*

Despite the alleged deficiencies in Regions' 736 Application, the Tarrant County Probate Court No. 2 signed an order granting the 736 Application and allowing an expedited foreclosure. *Id.* at ¶ 3.11. Although Plaintiff acknowledges that he was personally advised by a Regions representative that the Property was scheduled for foreclosure to take place on May 7, 2019, Plaintiff alleges that he did not receive a written notice of the time or place of the sale. *Id.* at ¶ 3.12. Plaintiff also states that Regions has refused to provide information about the loan to him and has, "on multiple occasions, wrongfully interfered with his possession of and attempts to sell the [P]roperty." *Id.* at ¶ 3.13. Prior to the foreclosure sale, Plaintiff filed the instant lawsuit in Tarrant County Court, which automatically stayed the sale. *See* Tex. R. Civ. P. 736.11. *Id.* at ¶ 3.14.

On May 21, 2019, Regions removed the case to this Court (ECF No. 1) and shortly thereafter filed a Motion to Dismiss. *See* Def.'s MTD, ECF No. 6. Plaintiff has responded (ECF No. 7) and Regions has replied (ECF No. 10). Thus, the Motion to Dismiss is now ripe for our consideration.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than

3

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins*, 224 F.3d at 498–99.

## III. ANALYSIS

Plaintiff asserts claims in his Original Petition for breach of contract, to quiet title, violations of the Texas Debt Collection Practices Act ("TDCPA") and Deceptive Trade Practices Act ("DTPA"), and he seeks a declaratory judgment. *See* Orig. Pet. at ¶¶ 4–8, ECF No. 1-1. Regions's motion to dismiss seeks dismissal of each claim. *See* Def.'s MTD, ECF No. 6. The Court examines each claim in turn.

### A. Plaintiff's Breach-of-Contract Claim

Under Texas law, an allegation of a breach of a deed of trust is brought as a breach-of-contract claim. *See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018). To state a claim for breach of a deed of trust contract, a plaintiff must allege (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) the plaintiff sustained damages as a result of the breach. *See id.*; *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 848 (Tex. 2018) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)); *see also Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834 (Tex. App.—Dallas 2009, no pet.) (citing *Hussong v.*

5

*Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ)).

Plaintiff asserts that Regions breached the Security Instrument by failing to provide a notice of default and opportunity to cure before accelerating ("notice of default"). Orig. Pet. at ¶ 4.1, ECF No. 1-1. Plaintiff's Original Petition further alleges breaches of the Security Agreement for failure to provide Plaintiff with a notice of the foreclosure sale of the Property and for failure to provide Plaintiff with a notice of acceleration. *Id.* at ¶ 4.4.

    1.    <u>Default for missed payments is not fatal to Plaintiff's claim.</u>

Relying on an unpublished opinion from the Fifth Circuit, Defendant first argues that Plaintiff fails to state a claim for breach of contract because Plaintiff does not allege the second element of his breach-of-contract claim—performance by Plaintiff.[2] *See Ybarra v. Wells Fargo Bank, N.A.*, 575 Fed. Appx. 471, 474 (5th Cir. 2014). However, more recently in *Williams v. Wells Fargo Bank, N.A.*, the Fifth Circuit addressed a mortgage loan servicer's contention that the appellants could not maintain a suit for breach of a deed of trust "because they have not alleged facts supporting their own performance under the contract, and therefore fail[ed] to satisfy the second element of their breach of contract claim as a matter of law." 884 F.3d at 244. *Williams* explained that Texas law recognizes several exceptions to the general rule that a party in default cannot maintain a breach of contract claim. *Id.* at 244–45. Namely, that "a party's default under a contract will only excuse the other party's performance of the contract's terms that are dependent upon the

---

[2]Plaintiff states in his pleading that "[u]pon information and belief, the Note was in default for a period longer than 47 months." Orig. Pet. at ¶ 3.9, ECF No. 1-1.

promises that the defaulting party failed to perform." *Id.* at 244. In *Williams*, the Fifth Circuit concluded that the term in the deed of trust that obligated the lender to provide notice of a foreclosure sale "was independent of the [appellants'] agreement under the note to pay monthly installments to satisfy the debt." *Id.* at 245. Indeed, the Fifth Circuit recognized that the obligation to give notice of foreclosure "would not even arise unless and until the [appellants] were in default under the note." *Id.*

Therefore, with respect to an alleged failure to provide a notice of foreclosure sale, the Court relies upon *Williams* and concludes that the alleged default for missed payments does not preclude Plaintiff's breach of contract claim because the agreement to provide notice of a foreclosure sale is independent of the obligation to make payments. And although notices of default and acceleration are different than a notice of foreclosure sale, they are similar because the lender's obligations to provide such notices are independent of the obligation to make payments and would not arise unless the borrower was in default. *See* Def.'s MTD at Ex.1 at 8, ECF No. 6-1.

Accordingly, Plaintiff's failure to allege performance under the Security Instrument does not require dismissal of his breach-of-contract claim.

    2. <u>Plaintiff cannot state an independent claim for violations of Section 51.002 of the Texas Property Code.</u>

Regions further argues that Plaintiff does not state a claim for breach of any provision of the Security Instrument but rather for violations of Section 51.002 of the Texas Property Code. *Id.* at 3; *see* Tex. Prop. Code Ann. § 51.002(b)(3), (d). Therefore, Plaintiff's breach-of-contract claim should be dismissed. Plaintiff responds that Regions

7

intentionally misreads his claim because he expressly pleaded breach of the Security Instrument. Pl.'s Resp. at ¶ 3.3, ECF No. 7.

Plaintiff's Original Petition does indeed reference section 51.002(b)(3) and (d) of the Texas Property Code in support of his breach-of-contract claim.[3] Pl.'s Orig. Pet. at ¶¶ 4.2–4.3, ECF No. 1-1. We recognize that "[n]either the Texas Supreme Court nor the Fifth Circuit has decided whether § 51.002 provides for a private right of action." *Lott v. Wells Fargo Bank, N.A.*, No. 3:17-CV-1270-L-BT, 2018 WL 4376413, at *4 (N.D. Tex. Aug. 22, 2018) (citing cases), *report and recommendation adopted sub nom.* No. 3:17-CV-1270-L, 2018 WL 4362632 (N.D. Tex. Sept. 13, 2018). However, this Court has recently granted summary judgment on a borrower's claim that the defendant lenders "violated Tex. Prop.

---

[3]These sections state as follows:

(b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt[; and]

(d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

Tex. Prop. Code Ann. § 51.002(b)(3), (d).

Code Ann. § 51.002(d) and (b)." *Robinson v. Deutsche Bank Nat'l Tr. Co. as Tr. for Registered Holders of Long Beach Mortg. Loan Tr. 2005-WL1, Asset-Backed Certificates, Series 2005-WL1*, No. 3:18-CV-2425-D, 2019 WL 4139399, at *2 (N.D. Tex. Aug. 30, 2019). The Court explained that "[t]o the extent [borrower] intends to plead a claim for a violation of Tex. Prop. Code Ann. § 51.002(b) and (d), this claim fails as a matter of law because '[§] 51.002 . . . does not provide a private right of action.'" *Id.* (quoting *Walker v. Willow Bend Mortg. Co.*, No. 3:18-CV-0666-D, 2019 WL 1569683 (N.D. Tex. Apr. 11, 2019). Therefore, to the extent Plaintiff asserts a breach-of-contract claim for violations of Section 51.002, such a claim should be dismissed.

### 3. Notice of Default, Notice of Acceleration, and Notice of Foreclosure Sale

The Security Instrument contains a Section (14), which is entitled, "Notices." Def.'s MTD Ex. 1 at 6. This section states that "[n]otice to any one Borrower shall constitute notice to all Borrowers unless Applicable law expressly requires otherwise." *Id.* The Security Instrument defines "Borrower" as "Johnnie N. Daniels, an Unmarried Person, and Randle C. Daniels, an Unmarried Person." *Id.* at Ex. 1 at 1.

Plaintiff concedes that "notices of default and intent to accelerate the debt were sent to 'Estate of Johnnie N. Daniels' and 'Troy Lee Daniels-Independent Executor' for the Estate of Johnnie N. Daniels." Pl.'s Orig. Pet. at ¶ 3.8, ECF No. 1-1. In *Wilmington Trust, National Association v. Blizzard*, the Fifth Circuit considered the argument of an ex-wife—who had been a party to the deed of trust but not the note—in which she contended that the although the lender had sent a notice of default to her ex-husband at his address, the lender

9

had failed to send a notice of default to her at her new address. 702 Fed. Appx. 214, 216–18 (5th Cir. 2017). The Fifth Circuit recognized that notwithstanding the requirements of section 51.002, the deed of trust stated that "[n]otice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise." *Id.* at 217. Thus, because the ex-husband never disputed that he had received the notices of default and of foreclosure, the Fifth Circuit concluded that the ex-wife had received constructive notice as required by Texas law. *Id.* at 218; *see also Robinson v. Wells Fargo Bank, N.A.*, 576 Fed. Appx. 358, 361 (5th Cir. 2014).

Here, the Security Instrument contains an identical notice provision to those in *Blizzard* and *Robinson*. Thus, because Plaintiff acknowledges that notices were provided to Johnnie's estate and because Johnnie is a "Borrower" as defined by the Security Instrument, Plaintiff fails to state a claim for breach of the Security Instrument.

4. <u>Damages</u>

Moreover, Plaintiff's failure to plead damages for breach of contract require dismissal. "The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained." *Peoples v. BAC Home Loans Servicing, LP*, 4:10-CV–489-A, 2011 WL 1107211, at *4 (N.D. Tex. 2011) (McBryde, J.) (concluding no damages were actually sustained because Plaintiff "remained in continuous possession and occupation of the residence, and title remain[ed] in her name"). Plaintiff's Original Petition fails to provide any allegations as to breach-of-contract damages.

Accordingly, the Court concludes that Plaintiff's breach-of-contract claim should be and is hereby **DISMISSED without prejudice**.

### B. Suit to Quiet Title

Regions seeks dismissal of Plaintiff's claim for quiet title. Through a quiet title action, a "plaintiff seeks to remove from his title a cloud created by an allegedly invalid claim." *Turner v. AmericaHomeKey Inc.*, 514 Fed. Appx. 513, 516 (5th Cir. 2013) (citations omitted). A suit to quiet title, which is also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).

To succeed on a quiet title claim under Texas law, a plaintiff must prove that: (1) he possesses an interest in a specific property; (2) his title to the property is affected by the defendant's claimed interest; and (3) the defendant's claim, although facially valid, is invalid or unenforceable. *Cook–Bell v. Mortgage Electronic Registration Systems, Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (citing *Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012)). A plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Turner*, 514 Fed. Appx. at 516 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).

1. No allegations as to the strength of Plaintiff's title

As an initial matter, besides the conclusory statements that Plaintiff is the owner of an undivided interest in the Property and that the Property is designated as Plaintiff's homestead, Plaintiff makes no assertion as to the strength of his own title. Accordingly, Plaintiff fails to state a claim for quiet title. *See Sharp v. Am. Homes 4 Rent Props. Eight, LLC*, No. 3:15-CV-1380-G, 2015 WL 4253162, at *4 (N.D. Tex. July 14, 2015) ("Sharp fails to state a quiet title claim because the complaint contains no assertions regarding the strength of his own title.").

2. Plaintiff's Limitations theory is incorrect.

Plaintiff further argues that he believes future discovery will reveal that the loan has been in default for more than four years, which according to Plaintiff, would make the lien unenforceable and thus make Plaintiff entitled to the removal of a void lien. *See* Tex. Civ. Prac. & Rem. Code § 16.035(a) (providing that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues"); *id.* at § 16.035(d) (providing that "[o]n the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void"); MTD Resp. at ¶ 4.2, ECF No. 7. But the limitations period provided in Section 16.035 on a mortgage loan that contains an optional acceleration clause accrues upon the lender's acceleration of the note, not upon the borrower's default. *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 203 (5th Cir. 2018) ("When a note or deed of trust secured by real property includes an optional acceleration clause, 'the action accrues . . . when the

holder actually exercises its option to accelerate.'") quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).

The instant loan contains an optional acceleration clause. *See* Def.'s MTD Ex. 1 at 8, ECF No. 6-1. Thus, because the validity of the lien with respect to limitations depends on if, when, and for how long the loan has been accelerated and not how long it has been in default, even if Plaintiff's allegation that the loan has been in default for more than four years is correct, without any allegation that it has been accelerated for more than four years, Plaintiff has failed to allege that the four-year limitations period has begun.[4] *See Holy Cross Church of God in Christ*, 44 S.W.3d at 566. Therefore, Plaintiff fails to state a claim for quiet title. *See Wells v. Bank of Am., N.A.*, No. 3:13-CV-3658-M, 2015 WL 4269089, at *7 (N.D. Tex. July 14, 2015) (concluding plaintiff's suit to quiet title "fails as a matter of law" after the court had determined that the mortgage lien was not invalid or unenforceable due to limitations).

Accordingly, Plaintiff's claim for quiet title should be and is hereby **DISMISSED without prejudice.**

---

[4]The Court notes that although Plaintiff states elsewhere in his Response that he "believes that the note was accelerated in 2012," (Pl.'s Resp. at 6 (citing Pl.'s Orig. Pet. at ¶ 6.6)), the allegation is not found in Plaintiff's Original Petition. The Court also notes that Plaintiff later asserts that Regions "has failed to properly accelerate the Note because it failed to give [Plaintiff] written notice of default and opportunity to cure prior to acceleration." Pl.'s Orig. Pet. at ¶ 7.3. These equivocations notwithstanding, the Court will allow Plaintiff an opportunity to amend his pleading, so he will have an opportunity to plead specific allegations concerning acceleration.

### C. Plaintiff's TDCPA Claim

Plaintiff's Original Petition alternatively asserts that if he is considered a borrower under the Security Instrument, Regions violated the Section 392.304(a)(8) of the TDCPA by its 736 Application. Tex. Fin. Code Ann. § 392.304(a)(8); Pl.'s Orig. Pet. at ¶¶ 6.3–6.4, ECF No. 1-1. That is, Regions filed its Rule 736 Application even though its claims are barred by the four-year statute of limitations. *Id.* Regions moves to dismiss this claim because the lien is not barred under Section 16.035 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a). MTD at 8–9, ECF No. 6.

As explained above, the Supreme Court of Texas has held that when "a note or deed of trust secured by real property contains an optional acceleration clause, *default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate.*" *Holy Cross Church of God in Christ*, 44 S.W.3d at 566 (emphasis added).[5] Plaintiff's TDCPA claim makes no allegation as to the date of acceleration. *See* Pl.'s Orig. Pet. at ¶¶ 6.3–6.5, ECF No. 1-1. Therefore, Plaintiff has not stated a claim for violations of Section 392.304(a)(8).

Accordingly, the Court concludes that Plaintiff's TDCPA claim should be and is hereby **DISMISSED without prejudice.**

---

[5]The Court notes that in his Response, Plaintiff states that also supporting his TDCPA claim is that Regions in its 736 Application "took the unfounded position that [Plaintiff] was not entitled to notice of default and the opportunity to cure prior to acceleration of the indebtedness." Resp. at 7, ECF No. 7. Again, such an allegation is not found in Plaintiff's Original Petition, but the Court will grant Plaintiff an opportunity to amend his pleading to plead such an allegation.

### D. Plaintiff's DTPA Claim

Plaintiff makes a claim for violations of the DTPA under the tie-in statute to his TDCPA claim. *See* Tex. Fin. Code Ann. § 392.404(a) (providing that "[a] violation of this chapter is a deceptive trade practice under [Tex. Bus. & Com. Code Ann. § 17.41 et seq.] and is actionable under that subchapter"). The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 765 (N.D. Tex. 2012) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)).

Plaintiff's Original Petition fails to state a DTPA claim for two reasons. *First*, because the Court has already concluded that Plaintiff has failed to state a claim under the TDCPA, his DTPA tie-in claim likewise fails. *See Tolliver v. Bank of New York Mellon as Tr. for Certificate Holders of CWABS Inc., Asset Backed Certificates, Series 2007-3*, No. 4:18-CV-00977-O-BP, 2019 WL 3937341, at *13 (N.D. Tex. Aug. 5, 2019) ("Because Tolliver has failed to state a claim under the TDCA, his DTPA tie-in claim also fails as a matter of law.").

*Second*, although Plaintiff in conclusory fashion alleges that he "qualifies as a consumer under the [TDCPA, and] he also qualifies as a consumer under the [DTPA]," (Pl.'s Orig. Pet. at ¶6.7) he has not alleged facts that would establish such a claim. This is because the DTPA defines "consumer" in part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4).

Thus, to be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint." *Hurd*, 880 F. Supp. 2d at 765 (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)). In accord with Texas courts, the Fifth Circuit has long held that the lending of money is not a good or service, so a borrower whose sole objective is to obtain a loan is not a consumer under the DTPA. *See Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)). Therefore, for a mortgagor to qualify as a consumer under the DTPA, he must allege that his primary objective in obtaining the loan must be to acquire a good or service, and that the good or service forms the basis of the complaint. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 724–25 (5th Cir. 2013).

In his Response, Plaintiff does not dispute these cases but maintains that they are wrongly decided. Resp. at 7, ECF No. 7. But this Court has repeatedly concluded that a mortgagor is not a consumer under the DTPA. *See, e.g.*, *Smith v. JPMorgan Chase Bank, Nat. Ass'n*, No. 3:14-CV-2402-M-BN, 2014 WL 6790749, at *13 (N.D. Tex. Dec. 2, 2014); *Nelson v. Wells Fargo Home Mortg.*, No. 3:10-CV-1771-O BF, 2012 WL 6928579, at *6 (N.D. Tex. Nov. 5, 2012), *report and recommendation adopted*, No. 3:10-CV-1771-O, 2013 WL 271537 (N.D. Tex. Jan. 22, 2013) (O'Connor, J.).

Moreover, Plaintiff's Original Petition asserts that he acquired the Property in 1988, and that he is not a borrower on the Note. Pl.'s Orig. Pet. at ¶¶ 3.1–3.2, ECF No. 1-1. Therefore, based on Plaintiff's pleading, the Court is unable to glean any goods or services

16

offered by Regions to Plaintiff such that would qualify Plaintiff as a consumer as defined by the DTPA.

Accordingly, the Court concludes that Plaintiff's DTPA claim should be and is hereby **DISMISSED without prejudice.**

    E.    **Plaintiff's Requests for Declaratory Judgment**

Plaintiff's Original Petition seeks declaratory judgment that the instant Security Instrument does not secure payment of the Note and that Regions is not the holder of the instant Note, that Regions is not entitled to receive payment on the Note, that Regions is thus not authorized to foreclose under the Security Instrument, and that Regions is barred from foreclosing due to the Texas Constitution, Art. XVI, § 50(a). Pl.'s Orig. Pet. at ¶ 7.5.1–7.5.5, ECF No. 1-1. Regions contends that Plaintiff's requests for declaratory relief concerning the relationship between the foreclosing entity and the underlying note are contrary to settled Texas law. MTD at 13–14, ECF No. 6. Regions also argues that Plaintiff's remaining requests for declaratory judgment are duplicative of Plaintiff's breach of contract and quiet title claims and thus should be dismissed. *Id.* at 14–15. In his Response, Plaintiff did not address Regions' Motion to Dismiss his declaratory judgment requests.

The federal Declaratory Judgment Act applies to cases removed from state court. *See Thompson v. Bank of America, N.A.*, 13 F. Supp. 3d 636, 660 (N.D. Tex. 2014) (citing *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013)). The federal Declaratory Judgment Act "is a procedural device that creates no substantive rights" and is "remedial in nature and dependent upon the assertion of viable causes of action." *Id.*

17

Therefore, because Plaintiff's underlying claims should be dismissed, his requests for declaratory judgment fail as a matter of law. *See Tolliver*, 2019 WL 3937341, at *17.

Accordingly, the Court concludes that Plaintiff's requests for declaratory judgment should be and are hereby **DISMISSED without prejudice.**

### F. Leave to Replead

Dismissal without prejudice is appropriate if a federal court finds that the plaintiff has not alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Thus, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Lopez–Santiago v. Coconut Thai Grill,* No. 3:13–CV–4268–D, 2014 WL 840052, at *5 (N.D. Tex. Mar.4, 2014) (quoting *In re American Airlines, Inc., Privacy Litigation*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005)).

In his Response, Plaintiff sought leave to amend his pleadings if the Court granted Regions' Motion to Dismiss. Resp. at 7, ECF No. 7. Plaintiff has not yet filed an amended pleading since this case was removed. Therefore, because this case is an early stage and because the Court believes on these facts that Plaintiff is potentially capable of alleging claims that could avoid dismissal, the Court **GRANTS** Plaintiff leave to amend his pleadings.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Motion to Dismiss (ECF No. 6), should be and is hereby **GRANTED.** Accordingly, the Court **DISMISSES** Plaintiff's claims **without prejudice.**

Plaintiff is **GRANTED** leave to amend to cure any defects **on or before October 11, 2019**. If Plaintiff fails to respond by this deadline, or if a timely amended complaint is subsequently dismissed, Plaintiff's claims will be **DISMISSED with prejudice**.

**SO ORDERED** on this **27th day** of **September, 2019**.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE